# Cambria Iron Company, Plff. in Err., *v.* Lucy Shaffer et al.

It is the duty of a mine owner to furnish employees suitable means of ingress and egress.

In an action to recover damages for the death of a miner where the evidence shows that a man way existed and that the deceased was killed while leaving the mine by the slope, it is, upon the question of contributory negligence, for the jury to determine whether the man way was of proper form and in proper condition.

(Argued February 1, 1887. Decided February 14, 1887.)

July Term, 1886, No. 113, E. D., before MERCUR, Ch. J., GORDON, PAXSON, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Fayette County to review a judgment on a verdict for the plaintiffs in an action of trespass on the case for negligence. Affirmed.

The facts as they appeared at the trial before INGHRAM, P. J., are stated in his charge to the jury, which was as follows:

It appears from the evidence in this case that the defendant, the Cambria Iron Company, for years prior to the first of February, 1883, and since that time, has been the proprietor and operator of coal works at Morrell in this county—coal works, I believe, run by a "slope" is the way they express it—and it further appears from the evidence that on the first of February, 1883, in had in its employ as a miner or coal digger one John Shaffer; and it further appears from the evidence that on the

1st of February, 1883, between 3 and 4 o'clock in the afternoon, John Shaffer was leaving the mine by the slope, and was run over by some empty coal cars and was killed; and it is claimed on the part of the plaintiffs, the widow and children of John Shaffer, that his death was caused by the negligence of the Cambria Iron Company, the defendant, in not providing a safe man way or some other means of egress from that mine, and that his death was caused by its negligence in that respect; and this action has been brought by the widow and children of John Shaffer to recover damages by reason of the loss which they claim they have sustained, which loss was caused by the negligence of the defendant company in not providing a way for the miners to leave the mine.

It is claimed on the part of the plaintiffs, and I believe not disputed or denied on the part of the defendant, that John Shaffer had been in the employ of the Cambria Iron Company as a coal digger for about four months prior to the first of February, 1883. And it is claimed on the part of the plaintiffs that he was a stout, able-bodied man, of industrious, temperate habits at that time; that he was able to earn from ninety cents to $1.50 per day in digging coal; and it is claimed by the plaintiffs that they have shown by a table which they have introduced in evidence, of the expectancy of life, that the expectation of life for a man of his age—fifty-three years at the time of his death—would be eighteen years, and they claim to recover in this action in the way of damages for that length of time, that being one of the measures of damages, or one way of estimating the damages which they claim to have the right to recover in this action.

It is also claimed on the part of the plaintiffs, that in attempting to leave the mine by the slope—as it is not denied the deceased was trying to do at the time of his death—he was using the only means provided by the Cambria Iron Company, the defendant, for his leaving the mine; that in quitting work on that day and other days before that time, in leaving the mine, that his only way of leaving—safe way—was by the slope, and that by doing so he was not only doing what he had a right to do, but what he was compelled to do by reason of the negligence of the defendant company in not providing some other way; and that he was killed while coming out that way, by the empty coal cars run by the company; that it was through

the negligence of the company, and that they have a right to recover in this action for that reason.

It is also claimed by the plaintiffs that they have shown by their witnesses and among others, Robert Hailes, that he was employed at mining at the time of the accident, working in the mine—was a coal digger, I believe, or was in the employ of the company in some other capacity; and they claim that they have shown by the testimony of Robert Hailes that Shaffer was employed between the second and third flats in the mine and that there was no man way or other means of egress for leaving the mine except by the slope, the way Shaffer was attempting to leave it at the time of his death. It is claimed that the testimony of Robert Hailes is to the effect that he had been at work for the company for some time prior to the 1st of February, 1883, and that, although there was a man way from the pit mouth to flat No. 2, beyond that there was no man way, and that the miners in leaving were compelled to use the slope for that purpose.

It is further claimed on the part of the plaintiffs, and it is not denied by the defendant, that Robert Hailes and some others discovered in entering the mine that something was wrong, and that they went to where John Shaffer was found and found him under the cars, took him out in the cars to the pit mouth and from there took him home; and it is claimed on the part of the plaintiffs that they have shown by the testimony of Robert Hailes that there was no man way between the second and third flats, and that Shaffer at the time he was killed was coming out the only way he could have come. You will remember that it is not claimed that there was no man way between the pit mouth and flat No. 2; and it is claimed, and I believe it is not disputed by the defendant, that the deceased, John Shaffer, was working between flat No. 2 and flat No. 3; and it is claimed by the plaintiffs that there was no man way between flats Nos. 2 and 3 for the use of the miners in leaving the mine.

It is further claimed by the plaintiffs that they have shown by the testimony of John Brown, that he was in the employ of the defendant company at the time of the death of John Shaffer; that he was working in the mine—I don't remember just where he was working, whether between flats Nos. 1 and 2 or Nos. 2 and 3—but it is claimed by the plaintiffs that they have shown

by the testimony of John Brown that he, while working there, did not know of any man way; but the plaintiffs claim to have shown by John Brown that there was no man way between flats Nos. 2 and 3.

It is claimed by the defendant that the testimony of John Brown only goes to show that he did not know of any man way between these two flats, and not that there was no man way; but the plaintiffs claim to have shown by this witness that while he was in the employ of the company there, he had occasion to go in and out as the other miners had, and that there was no man way between flats Nos. 2 and 3.

They further claim to have shown by the testimony of Martin Donehue the same fact—that he was in the employ of the company—I don't remember just exactly what he was doing, but that he was in the employ of the company—as a digger perhaps, as John Brown and Robert Hailes were; and the plaintiffs claim to have shown by Martin Donehue that there was no man way between flats Nos. 2 and 3, and that the only way the miners had of leaving the mine from flat No. 3 to flat No. 2 was by the slope in the manner in which John Shaffer was attempting to leave it at the time of his death.

The plaintiffs further claim to have shown by the testimony of Henry Sentz, who is a son-in-law of the deceased, that he was employed in the mine for a short time prior to the death of John Shaffer, and that there was no man way between flats Nos. 2 and 3, and that the miners were compelled in leaving the mine to go from flat No. 3 to flat No. 2 by way of the slope. It is claimed that he quit work for a day or two after the death of his father-in-law, John Shaffer, and that when he went back to his work in two or three days afterwards, he found there was a man way there that was not there before the death of his father-in-law; and it is claimed by the plaintiffs that the defendant did, after the death of John Shaffer, put a man way through from flat No. 3 to flat No. 2, as it was found by Henry Sentz on his return to work after the death of his father-in-law.

These are the facts as we remember them, gentlemen of the jury, on the part of the plaintiffs, going to show as they claim that there was no man way between flats Nos. 2 and 3. There may have been other witnesses introduced on the part of the plaintiffs to the same effect. I believe Mr. Maulsack was one, and one or two others besides; and it is claimed that the testi-

mony of these witnesses shows that there was no man way provided by the company for the use of the miners between flats Nos. 2 and 3, and that the miners employed by the company to work or dig in the mine between flats Nos. 2 and 3 were compelled, by want of a man way, or any other way, to go out of the mine—to leave or enter for that matter—to go by the slope; and that it was the only means provided by the company; and that by not providing any other or proper means for the use of the miners in entering and leaving the mine it was guilty of negligence, and that the death of John Shaffer was caused by want of a proper man way, or by the negligence of the company in not providing one, and that the plaintiffs have a right to recover in this action.

On the part of the defendant company, while, as we have stated, it is not denied that it is the proprietor of the works, and was prior to and at the time and since the death of John Shaffer, not denied that he was in the employ of the company on the first of February, 1883, when he was killed in the mine, not denied by it that he had been in its employ for four months prior to that time, not denied that he was killed on the slope and between flats Nos. 2 and 3 by being run over by the empty coal car, it is denied on the part of the defendant company that it is liable in this action, or that the plaintiffs have a right to recover anything on account of the death of John Shaffer, by claiming that at the time he entered its employ it had notices posted in different parts of its works—at the pit mouth, in the office of the superintendent, in the blacksmith shop, in the carpenter shop, and other places wherever it thought it necessary, notifying the miners that they should enter the mine and leave it by way of the man way.

It is claimed that it was the duty of the pit boss and others to instruct the miners—when employed in its mine—about the man way as a means of egress; and it is claimed that it did, by its proper officers, notify all its employees, John Shaffer and others, how to enter the mine and leave it, by showing them the way through the man way when they were employed; and it is claimed that the mine boss or pit boss whose duty it was to instruct John Shaffer when he was employed, as to how he should enter and leave the mine by the man way, did instruct him how to do so, and that he was put to work between the second and third flats, and that there was a man way between the

second and third flats; and it is claimed by the defendant company that John Shaffer, in attempting to leave the mine by the slope, was doing so in violation of the orders and regulations of the company, in violation of his instructions at the time he was employed, and that in doing so simply because it was easier for him to do so, he was guilty of contributory negligence; and if he was so guilty of contributory negligence he cannot recover in this action.

It is claimed by the defendant that it has shown by the testimony of James F. Beatty, I believe, who was the superintendent of the works at the time the man way was extended or deepened beyond flat No. 2 to flat No. 3, that they had worked a man way or made a man way as the work progressed. I believe he states that it was commenced about the beginning of the year 1882, and finished in about four months after that time, and by the time the mine was extended or deepened that the man way was completed—that they would work upwards in the man way, and that it was all done before Shaffer was employed by the company; and it is claimed by the defendant that it provided a man way for the ingress and egress of the miners; that it was there at the time they were put to work between flats Nos. 2 and 3, and that it was there at the time John Shaffer was employed, and that he together with the other miners of the company were notified of it, had knowledge of it; and that they were required by the company through its proper officers, in entering and leaving the mine, to enter and leave by the man way which had been provided; that it was proper, safe, and convenient; and it claims that in so far as Shaffer or the other miners entered or left the mine by the slope they were doing so in violation of the orders of the company, and knew they were so violating the orders of the company, and that there was a man way which had been provided by the company for that purpose and which by the rules of the company they were required to use.

It is claimed by the defendant that it had shown by the testimony of Andrew Beatty, who was the pit boss, I believe, the instructions given to the miners when they were employed, as to how they should enter the mine and as to how they should leave it.

It is further claimed by the defendant that it has shown by the testimony of both James F. and Andrew Beatty about the

time this man way was provided; and it is claimed that the superintendent states that he went through this man way every week and sometimes oftener before John Shaffer's death and afterwards.

It is also claimed by the defendant that it has shown by the testimony of superintendent Beatty that he was through that man way the week before or the week of the death of John Shaffer, and before his death; and it claims that this testimony goes to show that there was a man way there—a sufficient man way—from 6 to 8 feet high and 8 to 10 feet wide, I believe, the size they claim the man way was—and that it was sufficient · and it is further claimed that the testimony of the pit boss, Andrew Beatty, goes to show that he was through this man way almost every day from the time it was made to the time Shaffer was killed; that it was his duty to go through there; that he found it sufficient, but that it frequently needed repairs, and repairs were put upon it as they were needed; and it is claimed by the defendant company that it has shown by the testimony of Andrew Beatty that he had instructed John Shaffer, there employed along with the others, how he should enter the mine and leave it; that he had instructed the others, and it is claimed that the others as well as John Shaffer had gone through the man way and that it was sufficient and safe; that he had gone through it every day, and sometimes oftener than once a day, and that he always found it sufficient and safe.

It further claims to have shown by the testimony of William Jones or Thomas Jones that he was a driver at the works; had been there for some time before John Shaffer was employed by the company—I believe he is the driver who hauled the coal out of the room that Shaffer was employed in—that there was a man way there at the time Shaffer was employed, and that he used it, and that the other miners used it, and that he saw them doing so. It was claimed that it has shown by that witness that there was not only a man way there at the time Shaffer was employed, but that it was a safe and convenient one.

It further claims to have shown by John Beatty—I believe he was the trap boy employed to keep some doors closed there or to do something about the ventilation of the mine possibly—that he was to help the bell ringer who was stationed at the foot of the slope in flat No. 3; and it is claimed by the defendant company that on the day John Shaffer was killed this

witness' light had gone out—the wick of his light had burned down or something to that effect, and that he was waiting at the foot of the slope at flat No. 3 when John Shaffer was about to quit work; and it is claimed that the testimony of this witness shows that he asked John Shaffer—saw he was about to go up the slope, and asked him to go with him up the man way to show him out until he could get a light for his lamp; and it is claimed that John Shaffer broke loose from him, refusing to go up the man way, and started up the slope; and it is claimed that this witness waited at the foot of the slope until some other miners came out to light him out, and that when he reached the top he found John Shaffer had been killed by the cars; and it is claimed that this shows that John Shaffer knew of the man way, and knowing it preferred to leave the mine by the slope, and in doing so he was guilty of contributory negligence, and for that reason plaintiffs are not entitled to recover in this action.

It is further claimed that the testimony of William Morgan is to the effect that he was the bell ringer at Morrell; that his place was at the bottom of the slope; that he had been in the employ of the company some months before Shaffer was employed; that Shaffer's boys were employed with him in the mine; that Shaffer was a German, and not able to speak English, but that one of his boys understood English, and when it was necessary to communicate with Shaffer they did so through one of the boys; and it is claimed that he had seen John Shaffer trying to go up the slope different times, and that having had orders not to allow any miner to go up the slope he had called John Shaffer back and had required him on one occasion at least to go up the man way; and it is claimed that this testimony shows that there was not only a man way there, but that Shaffer knew of it as he had been required by the officers of the company to use the man way, and not go up the slope; and that if he did go up the slope he did it without the permission of the company, and in so doing was guilty of contributory negligence; and being guilty of contributory negligence, the plaintiffs here cannot recover in this action.

([It is a question of fact for the jury to determine whether John Shaffer knew of the existence of the man way between flats Nos 2 and 3, and whether, knowing it, he was guilty of contributory negligence in coming up the slope.

An employer of men is bound to furnish and maintain suitable instrumentalities for the performance of the duty which he requires of his employees; and failing in this he is liable for any injuries that may be caused to his employees by reason of such negligence. It was the duty of this defendant to provide suitable means of ingress and egress to and from the mines; and if it did not do so and any injury occurred by reason of not providing such suitable means of ingress and egress, it would be liable in damages for the injury caused by such neglect.]

But while it was its duty to so provide, it was also the duty of the men employed by it, if it did employ suitable means for entering and leaving the mine, to use those means provided by the employer; and if they did not do so, but used other means in violation of the orders of the company, they would be guilty of contributory negligence, and the party injured would have no right of action against the defendant company.

The duty of the company was a plain one. It was its duty to provide, as we have stated, suitable means for the men to enter and leave the mine; and if it did do so—and that will be a question of fact for the jury—and was not guilty of negligence by which Shaffer lost his life, then the plaintiffs would not have a right to recover). But the plaintiffs deny that the company did provide any means for entering and leaving the mine from flat No. 2 to flat No. 3, deny that there was a man way there; and the defendant claims that there was before Shaffer was employed by the company, and that there was and has been from the time the slope was sunk beyond flat No. 2; and it will be a question of fact for you to determine from the evidence.

If there was no man way there and Shaffer was using the only means of leaving the mine provided by the company, why then the company would be negligent in its duty to its employees, and would be responsible for any accident that might occur by reason of that negligence, and liable in this action.

If, on the other hand, you find from the testimony in the case that the company had provided a man way that was safe and convenient as a means of ingress and egress, then it was the duty of its employees to use that man way in entering and leaving the mine; and if they did not do so and were injured

by their neglect to do so, they would not be entitled to recover on account of having contributed to the accident themselves.

What we call contributory negligence is such a want of care and prudence under the circumstances as if exercised would have avoided the accident. A man is said to be guilty of contributory negligence if he does not avoid a known danger when he might have done so. If the company had provided a man way as it claims to have done, and if, as it claims to have shown, John Shaffer knew of it, knew that it was his duty to use it and did use it at times—if the company did provide such means as that, and he did not avail himself of it, but saw fit to leave the mine by way of the slope, he would be guilty of contributory negligence and the defendant would not be responsible in this action, and the plaintiffs would not have a right to recover. [If on the other hand it did not provide a proper man way and he was leaving the mine by the only means provided by the company, then he would not be guilty of contributory negligence; and if any accident occurred to him by which he was injured, the company would be liable to him for such injuries because of its negligence in not providing a suitable and safe way for leaving the mine, and the plaintiffs would have a right to recover such damages as you may find from the evidence they have sustained by reason of the loss they have suffered.]

If, under all the evidence in the case, you should find that the plaintiffs are entitled to recover, and that John Shaffer was not guilty of contributory negligence, then it will be your duty in making up your verdict to take into consideration, as the proper measure of damages, "the pecuniary loss suffered by the parties entitled by the sum to be recovered without any *solatium* for distress of mind; and that loss is what the deceased would probably have earned by his intellectual or bodily labor in his business or profession during the residue of his life, and which would have gone for the benefit of his children, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditure." It is also claimed by the plaintiffs that the supreme court has laid down the further rule that in estimating the value of life, what personal exertion may ever be required of its possessor or his possible want of capacity are not to be taken into account,—that the sound sense of the jury must ascertain the pecuniary value from the evidence in the case as best they may. That is in addition to the other, if

you find that there was a loss sustained by reason of having the head of the family taken away—the husband and the father.

It will be the duty of the jury to ascertain first from the evidence in the case whether the deceased, John Shaffer, was guilty of contributory negligence or not. If you should find from the evidence that he was, that suitable means had been provided by the company for the use of the miners in going in and coming out of the mine, then the plaintiffs would not be entitled to recover, and your verdict should be for the defendant. If, on the other hand, you find that John Shaffer was not guilty of contributory negligence, that he was leaving the mine by the way provided by the company, then the company had neglected its duty to prepare suitable means of leaving the mine, and it would be liable for its negligence, unless you should find that John Shaffer contributed to that negligence, and your verdict should be for the plaintiffs; and the next matter for you to consider would be the amount of damages they have suffered, as shown by the evidence in the case, recollecting what we have stated to you as the proper measure of damages in such cases; and having ascertained that amount, your verdict should be for the plaintiffs for that sum. [On the part of the plaintiffs we have been requested to instruct you: "If the jury should find that the defendant had not provided a man way between the second and third flats, communicating with the opening of the mine, not clogged or obstructed with machinery, pumps, or currents of heated air or steam, and 150 feet away from the man way, and did not at the time of Shaffer's death have this man way in reasonably good condition, the plaintiffs are entitled to recover."

We cannot affirm that point, gentlemen of the jury, and refuse to so instruct you. It seems that one act of assembly read in your hearing does require that these man ways be 150 feet from the slope, and that they be not obstructed by heated air or steam, or machinery, and so on; but if you should find from the evidence in the case that there was a man way here, such as is claimed by the defendant company, and that the deceased, John Shaffer, knew of it and did not use that man way but preferred to come up the slope in violation of the orders of the company, knowing the man way to be there, then he would be guilty of contributory negligence and the plaintiffs would not be entitled to recover, notwithstanding the fact that this man way may not have been 150 feet away from the slope. If the defendant com-

pany was guilty of negligence, it would not relieve the employees of the company of their care; and if they, in addition to the negligence of the company, were guilty of contributory negligence, or in this case if John Shaffer was guilty of contributory negligence, the plaintiffs would not be entitled to recover in this action; so that this point as stated is refused, and if you should find as we have stated, that the man way was there as claimed by the defendant in this action, and that the injury was caused by the contributory negligence of John Shaffer in not going up the man way as it was provided, then the plaintiffs are not entitled to recover in this action, and your verdict should be for the defendant.]

The verdict was for the plaintiffs, for $1,404.04. Thereupon the defendant took this writ, assigning as error the portions of the charge inclosed in brackets, the refusal of the court to enter a compulsory nonsuit, the refusal of the court to direct a verdict for the defendant, and that "the court in the general charge gave undue prominence to the evidence and claims of the plaintiffs, the effect of which was to mislead the jury."

*R. H. Lindsey* and *R. P. Kennedy,* for plaintiff in error.—
If a person specially undertakes to perform a peculiarly perilous work by operating a machine obviously wanting in suitable appliances for safety, knowingly and voluntarily, he cannot afterwards complain, in case of injury in consequence thereof, that the machinery was of a dangerous kind and that it was wanting in appliances reasonably necessary to render it safe. Marsden v. Haigh, 14 W. N. C. 526; Green & C. Street Pass. R. Co. v. Bresmer, 97 Pa. 103; Rummell v. Dilworth, P. & Co. 111 Pa. 349, 2 Atl. 355, 363; Sykes v. Packer, 99 Pa. 465.

It is no matter if the employer likewise knew of the danger. It is the knowledge of the employee that withholds from him the right of action. Haskin v. New York C. & H. R. R. Co. 65 Barb. 129; Frazier v. Pennsylvania R. Co. 38 Pa. 104, 80 Am. Dec. 467; Green & C. Street Pass. R. Co. v. Bresmer, 97 Pa. 106.

This case closely resembles the case of Payne v. Reese, 12 W. N. C. 97.

There an employee of a mining company, while engaged in the performance of his duties fell into a hole in the ground, caused by steam escaping from an underground wasteway, and it was held, in an opinion delivered by Justice GORDON, that

if at the time and place of the injury, the plaintiff saw the steam issuing from the ground and deliberately walked into it, and was thus precipitated into the excavation, he was, as matter of law, guilty of negligence which contributed to the accident, and that he could not recover.

When an employee, after having had the opportunity of becoming acquainted with the risks of the situation, accepts them, he cannot complain if subsequently injured by such exposure. By contracting for the performance of hazardous duties, he assumed such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain. Brossman v. Lehigh Valley R. Co. 113 Pa. 490, 57 Am. Rep. 479, 6 Atl. 226; Wharton, Neg. § 214.

The negligence of the employer is waived by the employee remaining in employment without protest or promise of amendment. This waiver cannot be affected by the rapidity or promptness with which he may be required to act at the time of the accident. Wells v. Burlington, C. R. & N. R. Co. 56 Iowa, 520, 9 N. W. 364.

Whether there is contributory negligence, under a given state of facts, is a question for the court, and not for the jury. Gerety v. Philadelphia, W. & B. R. Co. 81 Pa. 274; Catawissa R. Co. v. Armstrong, 49 Pa. 186; Gramlich v. Wurst, 86 Pa. 74, 27 Am. Rep. 684; Harrisburg v. Saylor, 87 Pa. 216, and Pennsylvania R. Co. v. Fries, 87 Pa. 234; Goshorn v. Smith, 92 Pa. 435; Jennings v. Pennsylvania R. Co. 93 Pa. 337.

If no particular instructions be asked, the court is responsible for the general effect of the charge, and if it has a tendency to mislead, it is cause for reversal. Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 16; Schum v. Pennsylvania R. Co. 107 Pa. 11, 52 Am. Rep. 468; Pennsylvania Canal Co. v. Harris, 101 Pa. 92.

*Edward Campbell* for defendants in error.

PER CURIAM:

This was clearly a case for the jury. Conceding that there was some kind of a man way, yet it was a question whether it was of proper form or in proper condition. This was a disputed fact, and bore directly upon the question of the alleged

contributory negligence.    We think the general tenor of the charge is fair.

Judgment affirmed.